CASTOR v. UNITED STATES (CASTOR et al., Third-Party Defendants).

No. 13874.

United States Court of Appeals Eighth Circuit.

May 10, 1949.

Rehearing Denied June 9, 1949.

Thomas C. Fitzgerald, of Kansas City, Mo., for appellant.

Richard H. Musser, Asst. U .S. Atty., of Kansas City, Mo. (Sam M. Wear, U. S. Atty., of Kansas City, Mo., on the brief), for the United States, appellee.

H. W. Wright, of Cherokee, Okl., for third-party appellees.

Before SANBORN, RIDDICK, and COLLET, Circuit Judges.

COLLET, Circuit Judge.

Plaintiff made claim to the Director of Insurance of the Veterans Administration for the face amount of a National Service Life Insurance Policy, No. 11,479,233, issued on the life of Arley O. Castor, in which policy plaintiff, Helen Maxine Castor, was designated as the wife and beneficiary. The claim was rejected on the ground that plaintiff was not the wife of Arley O. Castor at the time of his death and that the insured's father and mother, Ray W. Castor and Emma Castor, were the legal beneficiaries. This action was instituted against the United States to enforce the payment to plaintiff of the face amount of the policy, $10,000. Upon the order of the District Court, Ray W. Castor and Emma Castor were made third parties defendant. A motion for judgment on the pleadings was filed by defendants. The District Court sustained the motion and entered judgment that plaintiff was not entitled to the insurance and that the father and mother were. Castor v. United States, D.C., 78 F.Supp. 750. From that judgment plaintiff appeals.

The facts alleged in plaintiff's petition and stipulated by the parties are as follows: Plaintiff, under the name of Helen Maxine Pettijohn, was married to Frank William Price at Troy, Kansas, on September 4, 1935. At that time plaintiff was a

minor. Arley O. Castor was the husband of Juanita Castor. He was divorced from Juanita Castor by an interlocutory decree entered in May, 1940, in Oklahoma County, Oklahoma. On June 10, 1940, plaintiff and Arley O. Castor obtained a marriage license in Cleveland County, Oklahoma, and a marriage ceremony was performed between them there on the same day. Plaintiff alleged that she thought Price had attended to obtaining a divorce decree and that she did not know that he had not done so until 1943. Plaintiff and Arley O. Castor lived together as husband and wife from that time until Castor's death at Wichita Falls, Texas, July 10, 1943. On November 12, 1943, plaintiff brought an action in the Circuit Court of Buchanan County, Missouri, to annul her marriage to Frank William Price. Price at that time was in the military service. He filed a general entry of appearance and waiver of his rights under the Civil Relief Act of 1940, 50 U.S.C.A.Appendix, § 501 et seq. He did not contest plaintiff's petition, and on November 29, 1943, the court entered a judgment annulling the marriage in accordance with the prayer of the petition. After obtaining the decree of annulment, plaintiff made another claim for the insurance, which was denied on the same grounds as were assigned for the denial of her former claim. This action followed.

By Section 602(g) of the National Service Life Insurance Act of 1940, 38 U.S. C.A. § 802(g), Congress provided that the insurance issued under that Act: " * * * shall be payable *only* to a widow, widower, child * * *, parent, brother or sister of the insured. The insured shall have the right to designate the beneficiary or beneficiaries of the insurance, but *only* within the classes herein provided * * *." Unless plaintiff is able, therefore, to establish the fact that she was the lawful wife of the insured at the date of his death, she does not come within the class of beneficiaries designated by the Act. It is her contention that the annulment of her marriage of September 4, 1935, to Frank William Price on November 29, 1943, resulted in a legalization of her purported marriage to Arley O. Castor as of some date prior to the latter's death July 10, 1943. If she

was not Castor's wife on the latter date, she is not his widow now, because, for present purposes at least, the insurance matured on the date of his death and the marital relationship must have existed at that time.

In Cummings v. United States, D.C., 34 F.2d 284, 286, a member of this Court passed upon the effect of an annulment decree of a former marriage by a purported widow of an insured subsequent to the death of the insured. It was there held that:

"The default decree of annulment of the Van Catz marriage could not transform a void marriage into a valid one. So far as I am advised, this is the first time that the suggestion ever has been made that a man might have a posthumous wife. My opinion is that Allen's contract with the government matured at his death, and that the rights or liabilities of the government and of the person or persons to whom, under the law, the insurance was payable, then became fixed. If the plaintiff had been at that time Allen's lawful wife, she was entitled to the proceeds of the policy. If she was not then his lawful wife, she was not entitled to them. No decree of annulment of a former marriage could thereafter create a liability under his contract with the government."

The annulment decree of November 29, 1943, was therefore ineffective to change plaintiff's pre-existing marital status.

The issue therefore reverts to a consideration of the validity of plaintiff's Kansas marriage to Price in 1935 and the effect of that marriage on her purported Oklahoma marriage to the insured in 1940. The validity of the Kansas marriage is determined by the law of Kansas. The law of the latter state as interpreted by the Supreme Court of Kansas is that the marriage of a minor without the consent of parents or guardian (plaintiff asserted in her annulment proceedings that she was a minor and that it was without her parents' consent), while prohibited, is not void. In Browning v. Browning, 89 Kan. 98, 130 P. 852, 853, L.R.A.1916C, 737, Ann.Cas.1914C, 1288, that Court said:

" * * * where the statute is merely prohibitory, it has been generally held that a marriage contracted without the required

parental consent is not void because of the fact that such consent was not obtained; in other words, the consent of parents is not necessary to the validity of the contract."

The Kansas marriage of 1935 being valid, plaintiff was unable to contract another valid marriage so long as the former was undissolved by death or court decree, regardless of whether she thought Price had obtained a divorce. Plaintiff was therefore incompetent to contract a valid marriage to Castor in Oklahoma in 1940, her purported marriage to him was void, and she therefore cannot now be his widow. Jordan v. Missouri & Kansas Telephone Co., 136 Mo.App. 192, 116 S.W. 432.

The judgment of the District Court was correct and is affirmed.